IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY LLOYD HARRIS                                                                                          PLAINTIFF

v.                                          Civil No. 6:22-CV-06011-RTD-BAB

RICHARD TODD BALL and JOHN DOES 1-200[1]                                                DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Robert T. Dawson, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court is a Motion for Summary Judgment by Defendant Ball.  (ECF No. 23).

### I. BACKGROUND

Plaintiff filed his Complaint on January 20, 2021.  (ECF No. 1).  Plaintiff alleges that from the beginning of the COVID-19 pandemic to the time he filed this Complaint, Defendant Ball either "refuses to train and enforce mask wearing among his security staff or is deliberately indifferent to the health and safety of inmates and staff at this facility." (*Id*. at 4).  The facility in question is the Arkansas Division of Correction ("ADC") Ouachita River Unit.  Plaintiff further alleges that Defendant "Ball and unknown staff keep refusing to respond to grievances raising the subject."[2]  (*Id*.).  Plaintiff proceeds against Defendant Ball in both his official and personal

---

[1] The John Doe Defendants were not identified, and the deadline to do so has long passed.  (ECF No. 11).
[2] To the extent this could be interpreted as a complaint against the ADC grievance process itself, Plaintiff fails to state a cognizable claim.  The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure.  *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants

capacity. (*Id*.). Plaintiff seeks compensatory and punitive damages, including "appropriate funds to obtain actual PPE for inmates," inmate testing for long-haul COVID issues, and the donation of Defendant Ball's paycheck to a free clinic. (*Id*. at 7).

Plaintiff attached copies of two grievances to his Complaint, with beginning dates of December 6, 2021, and December 21, 2021. (ECF No. 1 at 8-9). The text of the grievance form with a Step One Date of December 6, 2021, is illegible. (ECF No. 1 at 8). The text of the grievance form with a Step One date of December 21, 2021, is only partially legible. There appears to be a reference to hand sanitizing stations. The last sentence states: "However Deputy Warden of Security Richard T. Ball has failed to train or enforce proper mask wearing policies among the majority of the security officers here at ORCU." (ECF No. 1 at 9). Neither grievance was dated or assigned a grievance number in the "For Office Use Only" box on the form. In order to progress from an informal Step One grievance to a formal Step Two grievance, the ADC grievance policy requires the inmate to submit his Step Two grievance form to the grievance officer, who then assigns a grievance number and logs the date the grievance was received in that box. (ECF No. 19-2 at 9). The grievances attached to Plaintiff's Complaint list a Step Two date, but do not contain any information in the "For Office Use Only" box. Thus, there is no summary judgment evidence that the copies Plaintiff attached to his Complaint were submitted to the grievance officer to begin the Step Two formal grievance process.

Defendant Ball filed his Motion for Summary Judgment on August 22, 2022. (ECF No. 19). He argues that Plaintiff failed to exhaust his administrative remedies against him prior to filing this lawsuit. (*Id*. at 2). He also argues that Plaintiff failed to state an Eighth Amendment claim, qualified immunity bars Plaintiff's personal capacity claims, and sovereign immunity bars

---

denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance).

Plaintiff's official capacity claims. (*Id*.). Defendant Ball filed an Addendum containing Plaintiff's deposition transcript on August 25, 2022. (ECF No. 22).

On August 26, 2022, the Court entered an Order directing Plaintiff to file his Summary Judgment Response by September 16, 2022. (ECF No. 23). Plaintiff filed a Notice of Address Change, Motion for Counsel, his Summary Judgment Response, and a one-page, three-paragraph Statement of Facts with attached grievance copies on September 12, 2022. (ECF Nos. 24-27). The Motion for Counsel was denied on September 13, 2022. (ECF No. 28).

In his Summary Judgment Response, Plaintiff does not dispute that he failed to exhaust any ADC grievances against Defendant Ball for COVID-19 mask-wearing policies prior to filing this case. Instead, he argues that "ADC policy fails to take in account active staff destruction and interference with the process." (ECF No. 26 at 2). He cites two Fifth Circuit cases for the premise that when time limits for responses expire without a response or when officials interfere, then grievances are exhausted. (*Id*.). He further states: "I no longer risk my last copy to prison officials." (*Id*.).

In his Statement of Disputed Facts, Plaintiff argues that "having filed all but one copy with a known adversarial grievance officer and no way to make copies, I opted to follow established caselaw."[3] (ECF No. 27 at 1). Plaintiff attached copies of grievance forms with starting dates of December 21, 2021, January 19, 2022, and January 23, 2022. (*Id*. at 2-6). None of these grievances are relevant to the claims in this case. The December grievance does not name Defendant Ball or make any mention of COVID-19 masking policy, and was not exhausted. (*Id*. at 2). The January 19th grievance does not name Defendant Ball, does not reference COVID-19 masking policies, and was not exhausted until long after this case was filed. (*Id*. at 5-6). The January 23rd grievance was started after this case was filed. (*Id*. at 5). The two

---
[3] Plaintiff cites to the two Fifth Circuit cases again as the caselaw in question.

3

January grievances complain of issues regarding COVID-19 testing; they were given grievance numbers, addressed by the ADC, and administratively exhausted. (ECF No. 27 at 4, 6).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff does not dispute that he failed to exhaust any ADC grievances concerning his complaints about Defendant Ball and COVID-19 masking policies. Nor do any of his arguments support a claim that he is eligible for an exception to the PLRA exhaustion requirement.

Plaintiff argues that ADC staff refused to respond to grievances concerning COVID-19 masking policies and enforcement, at times engaging in what he characterizes as "active staff destruction or interference." The ADC grievance policy in effect at the time, AD 19-34, permits an inmate to continue though the grievance process to exhaustion in the event he receives an

5

incorrect or unsatisfactory staff response, or simply fails to receive a timely staff response. (ECF No. 19-2 at 8, 11). Thus, assuming any ADC staff failed to respond to a grievance in a timely manner at any point in the process, Plaintiff needed only to submit a timely appeal. There is no evidence in the summary judgment record that Plaintiff took any steps to continue through the ADC grievance procedure to exhaustion regarding his claims in this case. Instead of providing evidence of such appeals, Plaintiff attached copies of grievances that either failed to progress past Step One and/or had no relevance to the claims in this case. In his deposition, Plaintiff testified that he was familiar with the ADC grievance process, and has filed other grievances and lawsuits in the past. (ECF Nos. 20 at 11; 22 at 6, 9-11). There is also no evidence that Plaintiff was denied access to the ADC grievance process, as the summary judgment record before the Court indicates he filed 32 grievances between May 14, 2020, and February 18, 2022, many of which Plaintiff appealed. (ECF No. 19-3 at 10-11). Plaintiff does not dispute his grievance record.

      Plaintiff also argues he followed Fifth Circuit caselaw when he decided not to pursue the ADC appeal process. This argument fails for two reasons. First, Plaintiff filed this case in the Eighth Circuit, not the Fifth Circuit. It is also well-established by the United States Supreme Court that it is the prison's requirements which control the boundaries of proper administrative exhaustion. *Jones*, 549 U.S. at 218. Second, Plaintiff testified there was a period of time where he simply decided not to complete the ADC grievance process, including the grievances attached to his Complaint. (ECF No. 22 at 10-12). As discussed above, Plaintiff provided deposition testimony that he is familiar with the ADC grievance process and has filed lawsuits in the past. (ECF No. 22 at 6, 9-11). He further admitted in his deposition that there was a period of several months where he filed request forms and grievances "without following up, being polite,

6

thinking oh, they'll get to it." (ECF No. 22 at 9). Finally, he testified that he did not receive a response to the grievances attached to his Complaint, and decided to "let the 30 days pass." (ECF No. 22 at 11-12). Thus, Plaintiff testified that he chose not to exhaust the administrative process for the only grievance in the summary judgment record where the text actually mentions Defendant Ball and COVID-19 masking policy. This testimony is supported by the grievance copy Plaintiff attached to his Complaint because there is no evidence that this grievance progressed past Step One.

Thus, Plaintiff failed to comply with ADC grievance procedure to exhaust any grievances relevant to this case. *See Jones*, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). There is no material fact in dispute concerning PLRA exhaustion for Plaintiff's claim, and Defendant Ball is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

Accordingly, it is recommended that Defendant Ball's Motion for Summary Judgment (ECF No. 23) be GRANTED, and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of December 2022**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE